The **PHOENIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT**, a Connecticut Corporation, Plaintiff,

v.

**GLENS FALLS INSURANCE COMPANY**, a New York Corporation, and Kenneth R. Wiekhorst, Defendants.

Civ. A. No. 64–34.

United States District Court
M. D. Florida,
Orlando Division.

Feb. 1, 1966.

Gurney, Gurney & Handley, Orlando, Fla., for plaintiff.

Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, Fla., for Kenneth R. Wiekhorst.

Sanders, McEwan, Schwarz & Mims, Orlando, Fla., for Glens Falls Ins. Co.

GEORGE C. YOUNG, District Judge.

THIS ACTION was instituted by the Phoenix Insurance Company of Hartford, Connecticut, a Connecticut corporation (hereafter "Phoenix") against Glens Falls Insurance Company, a New York corporation (hereafter "Glens Falls") and Kenneth R. Wiekhorst (hereafter "Wiekhorst").

The action was for declaratory and other relief. The essential controversy was the extent of the liability, if any, of each of the two insurance companies, Phoenix and Glens Falls, to defend and indemnify the third Defendant, Wiekhorst, because of an accident in which Wiekhorst was involved in the State of Mississippi on or about December 16, 1962, when his 1960 Ford truck, which was pulling a horse trailer with horses, was involved in a collision with two other vehicles.

At the time of the collision in question, each of the said insurance companies had in effect insurance policies insuring Wiekhorst. The insurance policy of Glens Falls was a Comprehensive General Liability and fleet motor vehicle policy, which had been executed and delivered in Omaha, Nebraska. In that policy the business or occupation of Wiekhorst was stated to be "Excavation Contractor". It included schedules of certain specifically listed vehicles, including both tractors, trucks and trailers. Neither the truck which Wiekhorst was driving at the time of the collision, nor the trailer which was being towed behind this truck, was specifically named or listed in the policy.

The policy issued by Phoenix had been issued in the State of Florida, and specifically insured the truck being driven by Wiekhorst at the time of the collision. Phoenix contended however, that because of an exclusion, its policy did not cover

or insure Wiekhorst in connection with this particular casualty.

Wiekhorst and Glens Falls disagreed with Phoenix and took the position that the policy of Phoenix did in fact insure Wiekhorst and was the primary coverage. Glens Falls took the position that its policy did not cover the automobile or the trailer, as they were not listed in its policy and were garaged principally in the State of Florida where the truck involved in the accident was licensed and registered, and were being used in a different business enterprise.

Wiekhorst asserted that he was entitled to insurance under one or the other or both of these policies, and in addition to seeking affirmative relief against the insurers, he also made a claim for statutory attorney fees pursuant to the provisions set forth in Section 627.0127, Florida Statutes, F.S.A.

The Court is advised that Phoenix settled certain claims asserted against Wiekhorst, having expended approximately $45,000.00 for that purpose, and that other claims which resulted in Final Judgments against Wiekhorst have been paid and satisfied by Phoenix, subject to a reservation of rights and without prejudice.

Various discovery depositions were taken, Interrogatories and Requests to Admit and Admissions filed with the Court, certain Affidavits filed with the Court and each party moved for Summary Judgment.

It was agreed by counsel for all parties, that all the facts relevant to the questions of insurance coverage were undisputed and fully established by the evidence before the Court, making a formal trial unnecessary as to these questions. Only questions of law were open for decision. The Court therefore now makes the following findings of undisputed facts and conclusions of law:

## FINDINGS OF UNDISPUTED FACTS

Wiekhorst had for some years been engaged in business in and around Omaha, Nebraska, as an excavation contractor. In connection with this business he owned certain motor vehicles and trailers, most of which were specifically insured under the policy of Glens Falls at issue here.

However, he also owned in Nebraska, a private passenger motor vehicle insured under an entirely different policy. Wiekhorst also owned a small utility type trailer which he sometimes used in his excavation business in Nebraska. Ordinarily, when using this trailer he would either pull it behind the pickup truck or behind a private passenger automobile.

Prior to the events in question, Wiekhorst purchased certain ranch lands in the State of Florida and began devoting a portion of his time to raising horses on this ranch. In connection with his ranch in Florida and for use in Florida, Wiekhorst acquired a 1958 Ford truck. Wiekhorst intended to use this truck exclusively in Florida in connection with his ranching activities there. Needing insurance on it, however, he consulted his insurance agent in Omaha, Nebraska, a Mr. Patterson, who had executed and delivered the Glens Falls policy.

It was suggested by Patterson that it would be more convenient for Wiekhorst to take out insurance in the State of Florida on this vehicle. It was not the intention of Patterson as agent of Glens Falls Insurance Company or of Wiekhorst that this truck be insured under the existing Glens Falls policy.

Wiekhorst took the truck to Florida where he had the title registered and he contacted the Beardsley-Nash Insurance Agency in Clewiston, Florida, and through that agency secured an automobile liability insurance policy covering that truck. This policy was Wiekhorst's first Florida automobile policy, and was written for a policy period from February 23, 1959 to February 23, 1960, and the insurance company issuing the policy was St. Paul Fire and Marine Insurance Company.

While this policy was in effect, Wiekhorst sold the 1958 Ford truck and purchased the 1960 Ford C-600 truck involved in this collision. Although Wiekhorst

purchased this truck in Nebraska, he had the title registered in Florida and promptly removed the vehicle to Florida. Thereafter, he had his Florida policy amended to substitute the 1960 Ford C–600 truck in lieu of the 1958 Truck. This was accomplished by Beardsley-Nash Agency through an endorsement effected November 11, 1959. On this policy, Wiekhorst's address was given as Clewiston, Florida, and his occupation that of a "Rancher".

On the anniversary date of this policy, the Beardsley-Nash Insurance Agency issued to Wiekhorst a renewal policy with St. Paul Fire and Marine Insurance Company covering the same vehicle and extending coverage from February 23, 1960 to February 23, 1961. In this policy the purposes of use of the truck was stated to be: "Commercial". On February 23, 1960, the policy as originally written with St. Paul was amended by endorsement to change the premium basis from its prior premium rating to "Class 6 (Farmer)".

For a period of time because of his business commitments elsewhere, Wiekhorst did not use this Florida truck and left it uninsured. Subsequently, however, becoming again active in his Florida activities, he requested Beardsley-Nash Agency once again to insure the said truck. At this time the Beardsley-Nash Agency was no longer authorized to write policies with St. Paul, and accordingly that agency wrote the new policy, effective July 1, 1962, to July 1, 1963, with Phoenix.

On this policy as issued and delivered, Wiekhorst's business was shown to be "Farming; pony ranch". The policy also showed that the premium rating classification was Class 6. Under this policy, Mr. Wiekhorst was covered by bodily injury liability to the extent of $100,000.00 for each person and $300,000.00 for each accident.

In the printed portions of the policy, under "Exclusions" this policy stated:

"This policy does not apply: * * * (c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured, and not covered by like insurance in the company; * * *."

The vehicle insured under this policy was a 1960 Ford C–600 truck, having a load capacity in excess of 1500 pounds.

Meanwhile Wiekhorst had brought the utility trailer to Florida and converted it to the purpose of carrying horses. From time to time he made trips with this truck and trailer throughout the Middle West, purchasing horses and ponies for use on his Florida ranch. Occasionally if the trailer were in Omaha, it might be used in connection with his excavation business while being towed by some other vehicle. The 1960 Ford C–600 was never used by Wiekhorst in connection with his business activities in the State of Nebraska, however, nor for any purpose except in connection with his Florida ranch.

It appears from the records of the Beardsley-Nash Agency, produced by Mrs. Nash on her deposition, that after the Beardsley-Nash Insurance Agency had issued the Phoenix policy, the Orlando office of Phoenix wrote to the Beardsley-Nash Insurance Agency as follows:

"We are advised that the insured left Clewiston area about a month ago and is now in Omaha, Nebraska, and is raising cattle and ponies there. Visits to Clewiston are seasonal and the truck covered under above policy is in Omaha.

In view of nature of risk, we are not sure we want to continue coverage and since livestock hauling is to be referred to HQ for approval, please have attached application completed and returned as soon as possible.

Thanks.

/s/ C. Bodamer"

The Beardsley-Nash Insurance Agency wrote Wiekhorst on July 27, 1962, for information and on August 1, 1962, Beardsley-Nash Insurance Agency wrote to Mr. Bodamer of Phoenix that Wiekhorst has a flourishing heavy equipment business in Omaha, that the insured truck was not licensed until July, 1962, when a stake

body was replaced and that that week Wiekhorst had brought in a load of horses and ponies valued at approximately $6,000.00; that he does his own driving; and that shortly thereafter he expected to buy another load, which he would haul himself. In this letter it was stated that after that the truck would be used on the Clewiston ranch as needed.

Thus, both the agency and Phoenix had actual knowledge that this truck was being used in Florida in the farming business.

Rule 34, paragraph 2 of the Florida Automobile Manual provides:

"That a commercial vehicle with a load capacity in excess of 1500 pounds owned by a farmer and used in connection with the operation or maintenance of his own farm, occasionally used to haul commodities from other farmers, shall be written at Class 6 rates."

Another paragraph of Rule 34 of the Casualty Manual provides that the insurance afforded by the policy with respect to the automobile described in Paragraph 2, (that is, a commercial vehicle with a load capacity in excess of 1500 pounds owned by a farmer used in connection with the operation or maintenance of his own farm) should also apply to any trailer or semi-trailer when used in connection with such vehicle, including farm wagons and farm implements, but not including home, office or display or passenger trailers.

It was agreed by the parties that the trailer which was being pulled at the time of the accident was not one of the excluded types, but was in fact a trailer used in connection with a farm truck for the hauling of horses—it was actually hauling four horses at the time of the accident.

Section 627.191, Florida Statutes, F.S. A., provides:

"No insurer or employee thereof, and no agent shall make or issue a contract or policy except in accordance with the filings which are in effect for such insurer as provided in Part 1 of this Chapter, or in accordance with § 627.-161 * * *."

■ The insurance business is closely regulated in the State of Florida. Insurance companies are required by law to make rating, premium, and policy filings with the State. Phoenix adhered to, and was bound by, the filings to which it adhered, and this included Rule 34 of the Automobile Casualty Manual. This rule established that the appropriate Premium rate for the Wiekhorst truck was Class 6—the rate used in the Phoenix policy. Rule 34, however, also provides:

"The insurance afforded by the policy with respect to the automobile described in Paragraphs 2 and 3 above, shall also apply to a trailer or semi-trailer when used in connection with such vehicle * * *."

Because the Phoenix policy was written at Class 6 rates, under the provisions of the last above-quoted portion of Rule 34 the trailer was covered by the insurance on the truck so that exclusion (c) —quoted above—did not apply.

The 1960 Ford C–600 truck was not listed among the vehicles insured under the Glens Falls "automobile fleet plan" endorsement, or elsewhere in the policy. By its express terms that endorsement purported to cover only such vehicles as were used for the purposes set forth in the "schedule attached". The schedule attached, a printed form, contained a list of vehicles under the heading "owned automobiles", but nowhere therein contained a sub-heading "purposes of use" under said heading nor was a purpose of use for owned automobiles specified elsewhere in the "attached schedule".

However, under the heading "hired automobiles" the printed form contained a heading "purposes of use" and under such heading the word "commercial" was inserted. The first page of the policy showed Wiekhorst's business as "excavation contractor". In addition to such "hired automobiles" the "Location Where Automobiles Will Principally be Used" was stated to be "Omaha, Nebraska and elsewhere in Iowa." The location of "headquarters as to now owned automobiles" was stated to be Omaha, Nebraska.

There is the additional issue as to whether or not the trailer being pulled by the Ford truck at the time of the collision was covered under the Glens Falls' policy so as to subject Glens Falls for some liability or obligation to their insured, since the truck had been used both in Wiekhorst's excavation business and in his Florida ranching business. This trailer had originally been acquired by Wiekhorst in 1952, and used in connection with his excavation contracting business in Omaha, Nebraska. He converted it to a horse trailer around 1960. While he occasionally pulled this trailer in Nebraska behind his 1962 Oldsmobile passenger car in connection with his construction business there, he used it primarily in connection with his Florida ranching business.

It is undisputed that at the time of the collision in question which occurred in Mississippi, that the trailer was being pulled behind the 1960 Ford C–600 truck in an operation connected solely with Wiekhorst's Florida ranching business. The accident occurred in the State of Mississippi.

Item 5 of the "Declaration" of the Glens Falls policy reads:

"Unless otherwise stated herein, the schedules (a) disclose all hazards insured hereunder known to exist at the effective date of this policy; (b) contain a complete list of all automobiles and trailers owned by the named insured at the effective date of this policy and the purposes of use thereof; * * *."

The fleet endorsement covered "all owned trailers * * * acquired during the policy period, used for the purposes stated in the schedule forming a part hereof (the endorsement)".

The trailer was not being used in connection with the business covered by the Glens Falls policy.

On the basis of the above findings of undisputed facts the Court makes the following:

## CONCLUSIONS OF LAW.

1. The Phoenix Insurance Company of Hartford, Connecticut, was legally obligated to represent and defend its insured, Kenneth R. Wiekhorst, in connection with any and all claims asserted against Wiekhorst, in connection with the motor vehicle collision in the State of Mississippi, which occurred on or about December 16, 1962, and to indemnify him to the extent of the policy limits stated in the Phoenix policy.

2. In regard to the Glens Falls policy, construing the policy as a whole, the Ford C–600 truck was not covered under said policy. The "automobile fleet policy" endorsement covered only the vehicles listed thereon, and other automobiles as defined in the policy when being used in connection with Wiekhorst's business as an "excavation contractor".

3. The trailer involved in the accident was also not covered by the Glens Falls policy at the time of the accident. A construction of the policy as a whole as a matter of law—and absent any evidence of any contrary intention on the part of the parties to the Glens Falls policy—dictates the conclusion that said trailer would be covered by the Glens Falls policy only when the trailer was used in connection with Wiekhorst's excavation business, or when it was towed by a vehicle insured under the Glens Falls policy, neither of which occurred herein.

4. Therefore, Phoenix is not entitled to contribution or indemnity either from Glens Falls or Wiekhorst.

5. Wiekhorst is entitled to have Judgment against Phoenix for his attorney's fees, pursuant to the provisions set forth in Section 627.0127, Florida Statutes, F.S.A. He may apply to the Court for a hearing date at which time the Court will take appropriate testimony in connection therewith.

6. A Judgment will be entered in accordance with the foregoing Findings of Undisputed Facts and Conclusions of Law.